UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHY CAPPS, et al,<br><br>Plaintiffs,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., et al<br><br>Defendants. | No. 2:22-cv-00806-DAD-JDP<br><br>ORDER GRANTING DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION AND STAYING COUNT VII<br><br>(Doc. No. 32) |

This matter came before the court on April 18, 2023, for a hearing on a motion to compel arbitration filed on behalf of defendant Experian Information Solutions, Inc. ("Experian" or "EIS"). (Doc. No. 32.) Attorney Ryan McBride appeared by video for plaintiffs. Attorney John Vogt appeared by video on behalf of defendant Experian. For the reasons set forth below, defendant Experian's motion will be granted.

**BACKGROUND**

On May 15, 2022, plaintiffs Kathy Capps and Loring Capps filed this action against defendants JPMorgan Chase Bank, N.A. ("Chase"), Experian, and Trans Union, LLC.[1] (Doc. No. 1.) The operative complaint contains seven causes of action. (*Id.*) Relevant to this motion,

---

[1] On December 12, 2022, the court dismissed Trans Union, LLC as a named defendant in this action with prejudice pursuant to plaintiffs and Trans Union, LLC's stipulation. (*See* Doc. Nos. 27, 28.)

1

plaintiffs assert one cause of action against defendant Experian for violating the Fair Credit Reporting Act, 15 U.S.C. § 1681c-2(A) (referred to as "Count VII" in the complaint). (*Id.* at 19.) The remaining causes of action are asserted against defendant Chase.[2]

On March 3, 2023, defendant Experian filed the pending motion to compel arbitration, contending that by signing up for "CreditWorks," a credit monitoring service with defendant Experian's corporate affiliate, ConsumerInfo.com, Inc. (which does business as Experian Consumer Services ("ECS")), plaintiffs agreed to arbitrate any claims against defendant Experian. (Doc. No. 32-1 at 6, 7.) Both ECS and defendant Experian are wholly owned by Experian Holdings, Inc. and share the same parent company, Experian plc. (Doc. No. 32-2 at ¶ 2.) To enroll in CreditWorks, plaintiffs had to complete a single webform, which required them to enter their personal information and create an account. (*Id.* at 9 & ¶¶ 3, 9.) Upon clicking the "Create Your Account" button, plaintiffs received a disclosure that stated in bold text, "I accept and agree to your Terms of Use Agreement . . . ." (*Id.*) Plaintiffs had the opportunity to click on a hyperlink, which was off set in blue text, and, if clicked, would have presented them with the full text of the terms of use agreement ("Terms of Use Agreement"). (*Id.* at ¶¶ 4, 10.) The Terms of Use Agreement in effect during plaintiffs' enrollment in CreditWorks contained an arbitration provision (the "Arbitration Agreement") (*id.* at ¶¶ 6, 12), which provides in relevant part that "ECS and you agree to arbitrate all disputes and claims between us arising out of this Agreement directly related to the Services or Websites to the maximum extent permitted by law" and:

> The agreement to arbitrate includes, but is not limited to: claims arising out of or relating to any aspect of the relationship between us arising out of any Service or Website, whether based in contract, tort, statute (including, without limitation, the Credit Repair Organizations Act) fraud, misrepresentation or any other legal theory; claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising); claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and claims that may arise after the termination of this Agreement.

---

[2] On July 22, 2022, the previously assigned district judge stayed all of plaintiffs' claims against defendant Chase pending completion of arbitration proceedings (Doc. No. 24 at 2) pursuant to plaintiffs and defendant Chase's joint stipulation (Doc. No. 21).

1   (*Id.* at 17–18.) The Arbitration Agreement further provides that "[f]or purposes of this arbitration
2   provision, references to 'ECS,' 'you,' and 'us' shall include our respective parent entities,
3   subsidiaries, affiliates . . . ." (*Id.*) Based on these provisions, defendant Experian argues that this
4   court must grant its motion to compel plaintiffs to arbitrate their claim against it. (Doc. No. 32-1
5   at 7.)

6   On March 17, 2023, plaintiffs filed their opposition to defendant Experian's motion.
7   (Doc. No. 36.) On March 23, 2023, defendant Experian filed its reply thereto. (Doc. No. 38.)

## LEGAL STANDARD

A written provision in any contract evidencing a transaction involving commerce to settle a dispute by arbitration is subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. The FAA confers on the parties involved the right to obtain an order directing that arbitration proceed in the manner provided for in a contract between them. 9 U.S.C. § 4. In considering a motion to compel arbitration, the "court's role under the Act . . . is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence the existence of an agreement to arbitrate. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)).

There is an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 631 (1985). As such, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 626 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). However, the Supreme Court recently clarified that "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, __U.S.__, 142 S. Ct. 1708, 1713 (2022). Rather, the presumption in favor of arbitration policy "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements

1 upon the same footing as other contracts." *Id.* (quoting *Granite Rock Co. v. Int'l Bhd. of*
2 *Teamsters*, 561 U.S. 287, 302 (2010)).

3 An arbitration agreement may only "be invalidated by 'generally applicable contract
4 defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to
5 arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."
6 *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Dr.'s Assocs., Inc. v.*
7 *Casarotto*, 517 U.S. 681, 687 (1996)). Accordingly, courts may not apply traditional contractual
8 defenses, like duress and unconscionability, in a broader or more stringent manner to invalidate
9 arbitration agreements and thereby undermine FAA's purpose to "ensur[e] that private arbitration
10 agreements are enforced according to their terms." *Id.* at 344 (quoting *Volt Info. Scis., Inc. v. Bd.*
11 *of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

## DISCUSSION

13 Under the legal standard set forth above, the court will first address whether there is a
14 valid arbitration agreement to which defendant Experian and plaintiffs are parties. Next, the court
15 will determine whether any valid arbitration agreement encompasses the dispute between
16 plaintiffs and defendant Experian and whether defendant Experience has waived its right to
17 arbitration. Finally, the court will decide whether to stay any causes of action that it has found
18 are properly submitted to arbitration.

19 **A.     Valid Arbitration Agreement**

20      1.     <u>Whether the Terms of Use Agreement Is an Unenforceable "Browsewrap"</u>
21             <u>Agreement</u>

22 In deciding whether parties have agreed to arbitrate, courts "should apply ordinary state-
23 law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*,
24 514 U.S. 938, 944 (1995); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir.
25 2014) (same). "It is undisputed that under California law, mutual assent is a required element of
26 contract formation." *Knutson*, 771 F.3d at 565. "'Mutual assent may be manifested by written or
27 spoken words, or by conduct,' and acceptance of contract terms may be implied through action or
28 inaction." *Id.* (internal citations omitted). "Thus, 'an offeree, knowing that an offer has been

4

made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains.'" *Id.* (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 991 (1972)). "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Id.* However, "[a]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Id.* at 566 (quoting *Windsor Mills*, 25 Cal. App. 3d at 993).

In their opposition to the pending motion, plaintiffs argue that the Terms of Use Agreement amounts to an unenforceable "browsewrap agreement" and therefore that no valid arbitration agreement exists between plaintiffs and defendant Experian. (Doc. No. 36 at 9.) The Ninth Circuit has explained that contracts formed over the Internet generally fall into two categories: (1) "'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use"; and (2) "'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen*, 763 F.3d at 1175–76. These two categories of Internet contracts fall on two ends of a spectrum; courts routinely find clickwrap agreements enforceable but are generally more reluctant to enforce browsewrap agreements. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022); *id.* at 868 (Baker, J., concurring). Moreover, "[o]ften websites present some hybrid of the two, such as putting a link to the terms of the agreement on the page, sometimes near a button the user must click to continue." *Berman v. Freedom Fin. Network, LLC*, No. 18-cv-01060-YGR, 2020 WL 5210912, at *2 (N.D. Cal. Sept. 1, 2020), *aff'd*, 30 F.4th 849 (9th Cir. 2022); *Berman*, 30 F.4th at 864–68 (Baker, J., concurring) (discussing the differences between "browsewrap," "sign-in wrap," "clickwrap," and "scrollwrap" agreements). To address this evolving spectrum, the Ninth

/////
/////
/////
/////

Circuit has summarized the analytical framework for contract formation over the Internet as follows:

> Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.

*Berman*, 30 F.4th at 856 (applying California law); *see also Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 461 (2021), *review denied* (Apr. 13, 2022).

Here, each plaintiff received the following disclosure in bolded text immediately above the "Create Your Account" button when creating their account: "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement . . . ." (Doc. No. 32-2 at ¶¶ 3, 5; *see also id.* at 9.) The phrase "Terms of Use Agreement" in the disclosure was a blue hyperlink that, if clicked, would have presented plaintiffs with the full text of the Terms of Use Agreement, including the Arbitration Agreement. (*Id.* at ¶ 4.) The court finds that the Terms of Use Agreement does not clearly constitute a browsewrap agreement because it is "not merely posted on [the] website at the bottom of the screen." *Lee v. Ticketmaster LLC.*, 817 F. App'x 393, 394 (9th Cir. 2020).[3] Rather, the Terms of Use Agreement is "somewhat like a browsewrap agreement in that the terms are only visible via a hyperlink, but also somewhat like a clickwrap agreement in that the user must do something else—click ["Create Your Account"]—to assent to the hyperlinked terms." *DeVries v. Experian Info. Sols., Inc.*, No. 16-cv-02953-WHO, 2017 WL 733096, at *5 (N.D. Cal. Feb. 24, 2017) (citation omitted).

To establish that plaintiff had constructive, or inquiry, notice of the Terms of Use Agreement, defendant Experian must first show that the website "provides reasonably conspicuous notice of the terms to which the consumer will be bound[.]" *Berman*, 30 F.4th at 856. In this context, to be conspicuous, "a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.*

---

[3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1   The court looks to "the conspicuousness and placement of the 'Terms of Use' hyperlink, other
2   notices given to users of the terms of use, and the website's general design" in determining
3   "whether a reasonably prudent user would have inquiry notice." *Nguyen*, 763 F.3d at 1177.
4   Next, defendant Experian must also show that plaintiffs unambiguously manifested their assent to
5   be bound by the Terms of Use Agreement. *Berman*, 30 F.4th at 857. "A user's click of a button
6   can be construed as an unambiguous manifestation of assent only if the user is explicitly advised
7   that the act of clicking will constitute assent to the terms and conditions of an agreement." *Id.*
8   (citation omitted). "[T]he notice must explicitly notify a user of the legal significance of the
9   action she must take to enter into a contractual agreement." *Id.* at 858.
10         Here, the court finds that a reasonable user would have seen the notice and would have
11   been able to locate the Terms of Use Agreement via the hyperlink. The notice is conspicuously
12   displayed directly above the "Create Your Account" button and is in regular sized, bold font. The
13   language "By clicking "Create Your Account": I accept and agree to your Terms of Use
14   Agreement" clearly denotes "that continued use will act as a manifestation of the user's intent to
15   be bound." *See Nguyen*, 763 F.3d at 1177. Furthermore, the "Terms of Use Agreement"
16   hyperlink is "conspicuously distinguished from the surrounding text in bright blue font, making
17   its presence readily apparent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir.
18   2023). Based on these features, the court finds that the website design provides constructive
19   notice of the Terms of Use Agreement. *See id.* (finding constructive notice of the terms based on
20   similar website features); *DeVries*, 2017 WL 733096, at *6 (finding that the website design
21   provided constructive notice where "[t]he text containing the Terms and Conditions hyperlink
22   was located directly above that button and indicated that clicking 'Submit Secure Purchase'
23   constituted acceptance of those terms"); *Crawford v. Beachbody, LLC*, No. 14-cv-1583-GPC-
24   KSC, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (noting that "[c]ourts have held that a
25   modified or hybrid clickwrap/browsewrap agreement constitutes a binding contract where the
26   user is provided with an opportunity to review the terms of service in the form of a hyperlink
27   immediately under the 'I Accept' button and clicks that button," and enforcing such an agreement
28   in that case). Indeed, one California district court that has considered the issue based on the very

same website as involved in this case held that the website's features provided constructive notice of the terms. *See Rodriguez v. Experian Servs. Corp.*, No. 15-cv-3553-R, 2015 WL 12656919, at *2 (C.D. Cal. Oct. 5, 2015).

In sum, the court finds that the website provided sufficient notice of the Terms of Use Agreement, and therefore that there was a binding arbitration agreement between plaintiffs and ECS.

### 2. Whether the Arbitration Agreement Extends to Defendant Experian

Plaintiffs and defendant Experian next dispute whether defendant Experian is a party to the Arbitration Agreement. (Doc. Nos. 36 at 6; 38 at 11.) The Arbitration Agreement expressly provides that "references to 'ECS,' 'you,' and 'us' shall include our respective parent entities, subsidiaries, affiliates . . . ." (Doc. No. 32-2 at 18.) In support of its pending motion, defendant Experian has provided a sworn affidavit from David Williams, a Vice President at ECS, who states that defendant Experian is an affiliate of ECS, including during the entire time plaintiffs were enrolled in CreditWorks, and that both entities share a common parent. (Doc. No. 32-2 at ¶¶ 2, 6.) Defendant Experian also contends that "EIS plays a significant role in the provision of Services under the Terms of Use, and is mentioned by name over 30 times in the contract." (Doc. No. 32-1 at 18.) Plaintiffs argue in their opposition to the pending motion that although there are vague references to "parent entities, subsidiaries, [and] affiliates" in the Arbitration Agreement, such references are insufficient to make defendant Experian a party to it because plaintiffs were not specifically put on notice of ECS's connection to defendant Experian. (Doc. No. 36 at 6.) However, plaintiffs have not identified any legal authority that supports their argument in this regard. (Doc. No. 36.) The court finds plaintiffs' argument unavailing.

In contrast to the dearth of legal authority supporting plaintiff's contentions, the court finds that there is ample support for defendant Experian's position. In particular, the Ninth Circuit's decision in *Meeks v. Experian Info. Servs., Inc.*, No. 21-17023, 2022 WL 17958634 (9th Cir. Dec. 27, 2022)[4] is instructive. There, the Ninth Circuit reviewed the arbitration agreement in

---

[4] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

8

what appears to be the same terms of use agreement as that here. *Id.* at *1. Holding that Experian was a party to the arbitration agreement, the Ninth Circuit explained:

> The text of the arbitration provision binds plaintiffs to arbitrate with ECS and defines ECS to include 'affiliates,' and Experian is an affiliate and was so when the plaintiffs entered into the agreement. That Experian was an affiliate at the time the contract was formed and that it plays a role in the larger agreement provide additional evidence that it assented to be bound and was not a mere third-party beneficiary.

*Id.* at *2 (internal citations omitted). Multiple district courts have reached the same conclusion when analyzing what appears to be the same terms of use agreement as that at issue here. *See Morgan v. Experian Info. Sols., Inc.*, No. 21-cv-05783-JCC, 2022 WL 681359, at *1 (W.D. Wash. Mar. 4, 2022) ("It is undisputed that the TOU applies to ECS affiliates and Plaintiff offers no cogent argument why ESI should not be considered one."); *Roberson v. Experian Info. Sols., Inc.*, No. 21-cv-00316-JKP, 2022 WL 62270, at *4 (W.D. Tex. Jan. 5, 2022) ("Plaintiff agreed to arbitrate its claims against ECS, as well as its parent entities, subsidiaries, and affiliates. It is undisputed that ECS is an affiliate of Experian."); *Levy v. Credit Plus, Inc.*, No. 21-cv-05541-KMK, 2023 WL 2644352, at *6 (S.D.N.Y. Mar. 27, 2023) (finding the same evidence to be sufficient to establish that Experian was an affiliate of ECS and a party to the contract); *Alvarez v. Experian Info. Sols., Inc.*, No. 19-cv-03343-JS-JMW, 2023 WL 2519249, at *6 (E.D.N.Y. Mar. 15, 2023) (finding that Experian assented to be bound by the arbitration agreement where the agreement defined ECS to include "affiliates" and where the terms of use mentioned Experian over 30 times). At the hearing on the pending motion, when specifically asked, plaintiffs' counsel could not identify any decision in which a court had reached a contrary conclusion. Plaintiffs also clarified at the hearing that they were not claiming that the Terms of Use Agreement here differed from the agreements in the cases cited above. Instead, plaintiffs simply reiterated their unpersuasive argument that they were not specifically put on notice that defendant Experian was an affiliate of ECS. Thus, plaintiffs did not provide any compelling reasons why the court should not follow the Ninth Circuit's decision in *Meeks*, 2022 WL 17958634, at *2, or the decisions of the several district courts which have addressed the same (or nearly the same) terms of use agreement as that at issue here.

Like the courts in the above-cited decisions, this court finds that the evidence presented by defendant Experian in connection with the pending motion to be sufficient to establish that defendant Experian is and was an affiliate of ECS during the entire time that plaintiffs were enrolled in CreditWorks and played "a significant role in the provision of Services under the Terms of Use," including being "mentioned by name over 30 times in the contract." For these reasons, the court concludes that defendant Experian was a party to the Arbitration Agreement. *See Meeks*, 2022 WL 17958634, at *2.

**B.      Whether the Dispute is Within the Scope of What Plaintiffs and Defendant Experian Agreed to Arbitrate**

Having determined that plaintiffs and defendant Experian are parties to a valid arbitration agreement, the next question is whether the dispute between plaintiffs and defendant Experian falls within the scope of what they agreed to arbitrate.

The scope of an arbitration agreement is governed by federal law. *Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25.

The Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, __U.S.__, 139 S. Ct. 524, 529 (2019). "In those circumstances, a court possesses no power to decide the arbitrability issue." *Id.* Generally, in the Ninth Circuit, "incorporation of the AAA rules constitutes 'clear and unmistakable' evidence that the parties intended to delegate the arbitrability question to an arbitrator." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (explaining that "one of [the AAA rules] provides that the 'arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration

10

agreement'") (citation omitted); *accord Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.").

In their opposition to the pending motion, plaintiffs argue that the substance of their complaint falls outside the scope of the Arbitration Agreement. (Doc. No. 36 at 4.) In its reply, defendant Experian contends that the Arbitration Agreement delegates this issue to the arbitrator to decide. (Doc. No. 38 at 8.) The Arbitration Agreement provides:

> All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement . . . .

(Doc. No. 32-2 at 19.) Furthermore, the Arbitration Agreement expressly incorporates the AAA rules. (Doc. No. 32-2 at 18.) Accordingly, the court concludes that plaintiffs and defendant Experian have clearly and unmistakably delegated the question regarding the scope of the Arbitration Agreement to the arbitrator. *See Brennan*, 796 F.3d at 1130; *see also Stephens v. Experian Info. Sols., Inc.*, 614 F. Supp. 3d 735, 743 (D. Haw. 2022) (concluding that "the parties have clearly and unmistakably delegated the issue of arbitrability to the arbitrator" where the arbitration agreement contained identical delegation language and incorporated the AAA rules); *Solis v. Experian Info. Sols., Inc.*, No. 22-cv-00102-CJC-KES, 2022 WL 4376077, at *2 (C.D. Cal. Sept. 21, 2022) (finding that the arbitrator must decide "scope" issues where the arbitration agreement contained identical delegation language).

**C.     Whether Defendant Experian Waived Its Right to Compel Arbitration**

Finally, plaintiffs and defendant Experian dispute whether defendant Experian waived its right to compel arbitration. (Doc. Nos. 36 at 6; 38 at 12.) Until recently, in the Ninth Circuit, a party seeking to prove waiver of a right to arbitrate was required to demonstrate: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Britton v. Co-*

*op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990).  However, the Supreme Court recently eliminated the third element of prejudice.  *See Morgan*, 142 S. Ct. at 1712–13 (holding that, under the FAA, a court may not "condition a waiver of the right to arbitrate on a showing of prejudice").  Thus, the waiver question turns on whether the party opposing arbitration establishes the first two elements:  (1) "knowledge of an existing right to compel arbitration" and (2) "acts inconsistent with that existing right."  *Britton*, 916 F.2d at 1412; *see also Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014–15 (9th Cir. 2023) (noting that since the decision in *Morgan*, "the party opposing arbitration still bears the burden of showing waiver, [but] the burden is no longer 'heavy,'" and explaining that "the burden for establishing waiver of an arbitration agreement is the same as the burden for establishing waiver in any other contractual context").

      At the hearing on the pending motion, the parties clarified that they do not dispute that the first element is satisfied here.  Thus, the court need only consider the second element:  whether plaintiffs have established that defendant Experian's intentional acts were inconsistent with exercising their right to compel arbitration.  In doing so, the court must consider "the totality of the parties' actions."  *Armstrong*, 59 F.4th at 1015 (citation omitted).  "[A] party generally 'acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court.'"  *Id.* (citation omitted).

      Having considered the totality of defendant Experian's actions in this case, the court readily finds that plaintiffs have failed to establish that defendant Experian's intentional acts were inconsistent with exercising its right to compel arbitration.  In support of their waiver argument, plaintiffs filed a declaration of their attorney Ryan McBride, wherein he states that on January 3, 2023, plaintiffs received deposition notices and defendant Experian's Initial Disclosures and First Set of Requests for Admission, Requests for Production of Documents, and Interrogatories.  (Doc. No. 36-1 at ¶¶ 4, 5.)  However, such actions alone are insufficient to establish a waiver.  *See Armstrong*, 59 F.4th at 1013, 1016 (holding that the defendant's limited discovery requests, which included serving five interrogatories and requiring the plaintiff to produce twenty-eight pages of documents, "did not evince a decision to take advantage of the judicial forum"); *Palmer*

1    *v. Omni Hotel Mgmt. Corp.,* No. 15-cv-1527-JM-MDD, 2016 WL 816017, at *4 (S.D. Cal. Mar.
2    1, 2016) (finding that the party's "litigation activity, which includes opposing a motion to transfer
3    venue, engaging in written discovery related to class certification, and taking a deposition," was
4    insufficient to establish a waiver). Moreover, in the nine- and one-half months since plaintiffs
5    initiated this action, defendant Experian has not sought nor obtained any ruling from the court on
6    the merits of the action. *See Armstrong*, 59 F.4th at 1016 (finding that the defendant did not
7    waver from its position that it had the right to arbitrate because it moved to compel arbitration
8    within a year after the plaintiff filed the complaint and it never sought or obtained a ruling on the
9    merits).

10   Accordingly, the court concludes that plaintiffs have not established that defendant
11   Experian waived its right to compel arbitration in this case.

12   **D.     Whether to Stay Proceedings Pending Resolution of Arbitration**

13   Under § 3 of the FAA, where an issue involved in a proceeding is referable to arbitration,
14   the district court "shall on application of one of the parties stay the trial of the action until such
15   arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3.

16   In its pending motion to compel arbitration, defendant Experian requests that the court
17   stay further litigation of this case pending resolution of arbitration as it relates to plaintiffs' claims
18   against it. (Doc. No. 32-1 at 19.) In their opposition, plaintiffs do not address defendant
19   Experian's stay request. (Doc. No. 36.)

20   Based on the court's findings above, the court will grant defendant Experian's pending
21   motion to compel Count VII of the complaint to be submitted to arbitration because it has
22   concluded that plaintiffs and defendant Experian are parties to a valid arbitration agreement and
23   defendant Experian has not waived its right to compel plaintiffs into arbitration. In addition, as
24   mentioned above, any disagreement between the plaintiffs and defendant Experian regarding the
25   scope of the Arbitration Agreement and whether it covers the dispute between them is a matter
26   that has been clearly and unmistakably delegated to the arbitrator under the terms of the
27   Arbitration Agreement. Accordingly, because the court has concluded that Count VII is an issue
28   that will be referred to arbitration, the court also finds that it must stay Count VII through the

completion of arbitration pursuant to § 3 of the FAA.

**CONCLUSION**

For the reasons explained above,

1. Defendant Experian's motion to compel arbitration (Doc. No. 32) is granted;
    a. Plaintiffs' claim against defendant Experian is stayed pending the completion of arbitration;
2. Plaintiffs and defendant Experian are required to notify the court that arbitration proceedings have concluded within fourteen (14) days of the issuance of the arbitrator's decision;
3. Because all claims in this action are now stayed pending the completion of arbitration[5], all dates currently on the calendar in this case are vacated; and
4. Defendant Experian's motion for a protective order and for a stay of discovery (Doc. No. 33) is denied as having been rendered moot by this order.

IT IS SO ORDERED.

Dated:   **April 20, 2023**

_Dale A. Drozd_
UNITED STATES DISTRICT JUDGE

---

[5] *See* fn. 2, above.